BRITISH VIRGIN ISLANDS
IN THE HIGH COURT OF JUSTICE
(COMMERCIAL DIVISION)

BVIHCM NO. 2015/0097

BETWEEN:

| | | |
|---|---|---|
| (1) | JSC MCC EUROCHEM | ) |
| (2) | EUROCHEM TRADING GMBH | ) |
| | Applicants/Claimants | ) |
| | vs. | ) |
| | | ) |
| (1) | LIVINGSTON PROPERTIES EQUITIES INC | ) |
| (2) | NIMATI INTERNATIONAL TRADING LIMITED | ) |
| (3) | NAUTILUS SERVICES LIMITED | ) |
| (4) | GLOBAL MED SERVICES INC | ) |
| (5) | SEVAN PROPERTIES MANAGEMENT LIMITED | ) |
| (6) | RUMBAY ASSETS CORP | ) |
| (7) | BANTER INDUSTRIES LIMITED | ) |
| (8) | VALERY ROGALSKIY | ) |
| (9) | DIMITRY POMYTKIN | ) |
| (10) | NEDJET BAYSAN | ) |
| (11) | KOPIST HOLDING LIMITED | ) |
| (12) | ITRADE FERTILISERS S.A. | ) |
| (13) | FABIO SCALAMBRIN | ) |
| (14) | DARLOW ENTERPRISES | ) |
| (15) | DARLOW INVESTMENT LP | ) |
| (16) | DEARBORN ENTERPRISES LIMITED | ) |
| (17) | GIANTHILL MANAGEMENT LIMITED | ) |
| (18) | DREYMOOR FERTILISERS OVERSEAS PTE LIMITED | ) |
| | Respondents/Defendants | ) |
| | | ) |

TRANSCRIPT OF PROCEEDINGS

Tuesday, February 9th 2016
2:04 p.m. to 2:36 p.m.

*ORAL JUDGMENT*

BEFORE: HONOURABLE JUSTICE EDWARD BANNISTER, Q.C, Judge

Court Reporting Unit
Government of the British Virgin Islands
Road Town, Tortola
British Virgin Islands

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

```
APPEARANCES:            MARTIN KENNEY & CO.
                        Chambers
                        Road Town, Tortola
                        British Virgin Islands
                        BY: MR. JUSTIN FENWICK QC
                        MR. ANDREW GILLILAND
                        MR. DAN WISE

                        For the Applicants/Claimants


                        CAREY OLSEN
                        Chambers
                        Road Town, Tortola
                        British Virgin Islands
                        BY: MR. BEN MAYS


                        For the Third, Fourth and
                        Seventeenth Defendants



                        MOURANT OZANNES
                        Chambers
                        Road Town, Tortola
                        British Virgin Islands
                        BY: MR. ANDREW EMERY


                        For the Second and Fifth Defendants



                        LENNOX PATON
                        Chambers
                        Road Town, Tortola
                        British Virgin Islands
                        BY: MR. SCOTT CRUICKSHANK
                        MR. MATTHEW FREEMAN


                        For the Eleventh Defendant
                             *  *  *
```

1                    AFTERNOON PROCEEDINGS

2                          *  *  *

3                 (Matter resumed at 2:04 p.m.)

4            MR. WISE:                My Lord, before

5   you give your Judgment, I wonder if I might raise two

6   points regarding the form of order that's before you on

7   the basis about an observation Mr. Mays made just at

8   the beginning of the luncheon adjournment, which I

9   think is very helpful to the parties.  I draw the

10  Court's attention to slightly unusual features of the

11  Draft Order that's placed before you.

12           The first one, My Lord, is Clause

13  9(1)(ii) which appears at page 4 of the Draft Order.

14  And, My Lord, you will see that that sub clause (ii)

15  contains substantial disclosure obligations relating to

16  the movements of money.  Now, we would accept --

17           THE COURT:              I hadn't picked

18  that up, Mr. Wise.  Right, yes.

19           MR. WISE:               We would accept

20  that that is a departure from the normal level of

21  disclosure obligations imposed within a freezing order.

22  We firstly would like to draw the Court's expressed

23  attention to that.

24           THE COURT:              Let me just

25  read it.

4

1        MR. WISE:              Yes, of course.

2        THE COURT:             Which advance

3   disclosure really, isn't it?

4        MR. WISE:              It is, to some

5   extent that is a summary of it, My Lord, yes.  Now,

6   however, if the Order is to be granted it is on the

7   basis, some interim basis, a requirement to grant

8   interim relief pending the outcome of the trial of the

9   matter has been made out.  And, My Lord, the Applicant

10  seeks to justify its inclusion by reference in

11  particular to paragraphs 42 and 43 of the Fourth

12  Affidavit of Mr. Popov which is in the freestanding

13  bundle, I believe.

14       THE COURT:             Yes, it is,

15  hang on.  I've got it here.  42 and 43?

16       MR. WISE:              42 and 43, My

17  Lord, the second half in particular of 42, and the

18  first half of 43.  I'll let you find it, My Lord.

19       THE COURT:             Yes.  What does

20  this say?

21       MR. WISE:              Essentially,

22  the paragraph make the point that although the

23  Applicants have gone through significant efforts in

24  obtaining the substantial amount of information, they

25  are still encountering difficulties in obtaining a full

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1   picture, and the picture to which in the context of the

2   claims they make, they believe they are entitled to and

3   it's for that reason and in particular the

4   juxtaposition of the recent outcome of the disclosure

5   Order in Cyrus against what they had been told

6   previously that they think these fairly broad

7   disclosure obligation would justify within this

8   freezing order.  I wanted to make that point, My Lord,

9   so it wouldn't be said that we had slip that through,

10  an unusual picture of an Order.

11              THE COURT:              Thank you very

12  much.

13              MR. WISE:              Now, the second

14  point, My Lord, is in respect of the, if you would look

15  at Clause 11 of the Draft Order on page 5, which is

16  dealing with exceptions to the Order, My Lord, it is

17  very common in an order such as this, My Lord, to have

18  exceptions so to the extent that a respondent to be

19  always careful in its ordinary course of business in

20  this Order, My Lord, because apart from Dreymoor, it's

21  the Applicants' case that there is no ordinary course

22  of business, there is not an exception.

23              THE COURT:              Right.

24              MR. WISE:              I'm getting

25  guidance from Mr. Fenwick.  Oh, yes, that's the third

1   point.  So that's the point about that, My Lord, there

2   isn't a normal ordinary course of business but we would

3   say with the exception of Dreymoor, the Respondents

4   tend to have an ordinary course of business.

5            And, My Lord, the final point that I seek

6   to make now is at paragraph 3, the Draft Order.  It's

7   Clause 5, My Lord, of the Order, and it sets out in

8   this draft updated totals of figures, I wanted to draw

9   that to your attention, over and above which is

10  different from the original Draft Order which was

11  filed, My Lord.  And that's all I have to say.  Thank

12  you, My Lord.

13            THE COURT:            Right.  Well

14  this morning I heard an application for freezing relief

15  against a large number of Defendants by two associated

16  companies of which the First Claimant is a Russian

17  entity and the second, I believe, Swiss, which are

18  large players in the international artificial

19  fertilizer business.  What has happened can be put very

20  shortly.  They have discovered and there is really no

21  doubt about this, that between about 2005 and early

22  April or May 2014, two very senior executives of the

23  Russian entity had been offering favourable business

24  terms to purchasers from one or other of the two

25  companies in exchange for secret commission payments or

7

1    to give them their, more common term, 'bribes'.

2              The center for the fraud was, as far as

3    can be seen from what I've been shown, Moscow but there

4    were activities in Norway and possibly elsewhere which

5    contributed to the harm done to the Claimants as a

6    result of the misbehaviour of these executives.  They

7    are named as the Eighth and Ninth Defendants in the

8    proceedings, but two other individuals, the Tenth

9    Defendant, who is a Turkish national, was implicated in

10   the Norwegian end of the scam and Mr. Fabio Scalambrin,

11   who was also implicated there also be made Defendants,

12   they are the Tenth and Thirteenth Defendants.

13             The inquiries made by or on behalf of the

14   two Claimant companies have established that the cash

15   which was tendered in respect of these commission

16   payments was received by essentially the First to Sixth

17   Defendants, all of which are BVI companies.  Further

18   transactions involving BVI companies, after receipt,

19   appear to have been directed to laundry using or

20   concealing the money which was paid in bribes.

21             There are also Defendants who have been

22   joined as the payers of bribes, although four of the

23   most significant payers have not been joined for

24   reasons which have been explained to me and seem to be

25   good reasons.

1          There is, of course, a significant

2    problem with delay here or at least a significant

3    potential problem with delay, because although it was

4    not obviously immediately apparent in Spring of 2014

5    that the BVI Companies who received these secret

6    commissions had done so certainly by the next year,

7    2015, it had been fairly well established that they had

8    in an application which was made for similar relief in

9    that year was dismissed by me on the grounds that it

10   was effectively an application which had been badly put

11   together and didn't justify the granting of any relief.

12          Nobody knows how much, if any, of the

13   secret commissions is retained by the First to Sixth

14   Respondents, but it seems to me that notwithstanding

15   the delay, it must be right to grant freezing relief in

16   respect of them as asked.

17          It may be that all the money has gone,

18   but there is authority in England that that should not

19   militate against the grant of injunctive relief if it's

20   otherwise justified, then in my view, such relief is

21   justified here.  I don't think the delay alters the

22   position.  It is pleaded against those companies that,

23   and I am paraphrasing, that they were mere creatures of

24   the prime actors and as such are affected with their

25   knowledge as a result of which they hold whatever

1    assets, they retain or held whichever assets they at

2    any time did hold on constructive trust for the

3    Claimants.

4              There are claims, not only against the

5    initial recipient, as I have said, but against other

6    BVI entities which it seems to me justified similar

7    relief which I have proposed to grant.

8              Since this application is an ex parte

9    application effectively on notice, it will be open to

10   any of those entities to apply if so advised in due

11   course to have that relief discharged.

12             I have much more difficulty with the

13   claims against the four individuals, the two Moscow

14   executives, Mr. Rogalskiy and Mr. Pomytkin and

15   Mr. Baysan and his associate Mr. Scalambrin, who as I

16   have tried to explain, were involved in the Norwegian

17   end of the scam.

18             Mr. Fenwick, Queen's Counsel for the

19   Claimants says that there is every reason why freezing

20   orders should be made against them as well.  He says

21   correctly that the BVI entities have been properly

22   served here, that which is true, I think there is one

23   exception, but that is a matter of time only, and he

24   says that the individuals were the Eighth, Ninth, Tenth

25   and Thirteenth Respondents unnecessary and proper

1   parties to the claims against the BVI companies have

2   been properly joined and that justice requires that if

3   the Court is going to freeze the assets of the BVI

4   entities, it should also freeze the assets of the

5   individuals.

6            I should say that permission to serve out

7   on those individuals has been granted by this Court

8   although, for understandable reasons, service has not

9   yet been able to be effected.

10           I can't accept Mr. Fenwick's submission.

11   It seems to me that whether or not they fell within

12   Rule 7.3 of our Civil Procedure Rules, the individual

13   Respondents have really nothing to do with this

14   jurisdiction at all.  They are alleged to be and there

15   is strong evidence that they were the instigators and

16   perpetrators of this very serious fraud elsewhere in

17   the world.  As I say, primarily in Moscow, although

18   there are other geographical areas which could be

19   pointed to, none of them so far as the evidence goes

20   has any connection with this jurisdiction other than

21   the fact that they are the proprietors of companies

22   incorporated here and none of the acts which are

23   complained of took place here.

24           Indeed, if one looks at the amended

25   pleading in relation to the BVI entities, and I am

1    starting at paragraph 35 of the Amended Statement of

2    Claim, it says:

3            "The Commissions..." and they are the

4    ones relating to the Norwegian business "...were agreed

5    and arranged between Mr. Baysan, Mr. Rogalskiy and

6    Mr. Pomytkin.  The Commissions were improper secret

7    commissions which were paid and received dishonestly.

8    They involved and constituted breaches of the duties

9    owed by Mr. Rogalskiy and Mr. Pomytkin to the

10    Claimants.

11            The knowledge of Mr. Rogalskiy and

12    Mr. Pomytkin in relation to the Balderton Secret

13    Commissions falls to be attributed to..." and then

14    certain of the BVI companies recipients are mentioned.

15            And because of that knowledge, it's

16    alleged that they each received payments in

17    circumstances which means that the monies held upon

18    constructive trust for the Claimants.

19            It's true that there is a rather

20    farfetched claim in conspiracy and another for knowing

21    assistance, but basically what is being said is that

22    these are instruments in the hands of Mr. Rogalskiy and

23    Mr. Pomytkin in the perpetration of this fraud.

24            So that although it's quite true to say

25    that there is a perfectly well pleaded claim for

12

1   equitable relief, there is also a claim in conspiracy,

2   I might say but there is a perfectly well pleaded claim

3   for equitable relief against them.  They are not

4   alleged to have done anything themselves at all in any

5   real sense, although it is said that they conspired, as

6   I have already mentioned.

7             In these circumstances, it does seem to

8   me that it's very difficult to reach the conclusion

9   that the BVI is an appropriate forum, let alone clearly

10  an appropriate forum for the trial of these

11  proceedings.

12             As I say, an order of this Court has been

13  made permitting them to be served out, of course,

14  that's an ex parte order by definition, but when it

15  comes to granting injunctive relief, it seems to me

16  that the Court has to look at the underlying realities

17  of the position.  This claim is connected with this

18  jurisdiction only because it is the territory of

19  incorporation or various entities which we use to

20  receive the proceeds of the fraud, but as I have

21  already tried to indicate, it's not suggested that

22  those entities did anything at all or if they did

23  nothing very much in relation to the fraud itself.

24             I quite see the reasoning which

25  Mr. Fenwick advances, but I can't accept that it

13

1   justifies the Court making highly intrusive long arm

2   orders against foreigners in these circumstances.

3                   For example, had proceedings been on foot

4   in another jurisdiction and this Court had been asked

5   to do so, it seems to me that it would have been right

6   for it to make Black Swan orders against the BVI

7   Respondents freezing their shares and making other

8   orders to ensure that the shares value was not

9   improperly diminished and I take the view that that's

10  really the right way around in this case and that it's

11  not appropriate to use the accident of the

12  incorporation of effectively non-actors or puppets to

13  justify injuncting the puppet masters.

14                  As I've said, I will make orders against

15  the puppets as asked, although I am not going to order

16  the disclosure which is mentioned in paragraph 9,

17  subparagraph 1(ii) which seems to me to be in the

18  nature of early disclosure rather than design to enable

19  the Claimants to police the freezing injunction which I

20  do make against the BVI entities in the terms set out

21  in the second version of the Draft Order with which I

22  have been supplied.  So that is my decision.

23                  MR. FENWICK:              I am grateful

24  for that.  There are three matters to deal with

25  immediately.  First, Your Lordship identified the First

14

1    to the Sixth Defendants.

2             THE COURT:                Well, I did

3    that out of laziness but I am including all the BVI

4    entities alleged either to have received commissions or

5    to have imparted the transfers of those commissions

6    after receipt.

7             MR. FENWICK:               Well, that's

8    the Seventh and Seventeenth Defendants as well.

9             THE COURT:                Yes.

10            MR. FENWICK:               I am grateful

11   for that.

12            My Lord, the second matter is the Order

13   at present contained an undertaking at Schedule B, "not

14   to, without permission of the Court to enforce that

15   outside the British Virgin Islands..." I have dealt

16   with that, "...or seek an order of similar nature

17   including conferring a charge or other security..."

18            So it's an order of a similar nature and

19   in respect of those Respondents where Your Lordship has

20   declined to make an order, I would invite Your Lordship

21   to make clear that they are not included in that

22   undertaking, so that we can, if so advised, proceed

23   against Mr. Rogalskiy and Mr. Pomytkin and the others

24   in some other jurisdiction.

25            THE COURT:                That must

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1  follow, yes.

2                MR. FENWICK:              I am grateful

3  for that.

4                The second matter is this, that in

5  circumstances where Your Lordship has found, that we

6  submit correctly that there is strong prima facie case

7  that the assets received by the BVI company were held

8  on constructive trust, where if in answer to the

9  injunction the disclosure order limited that you have

10  made, it appears that the many millions of dollars are

11  no longer in the BVI companies and therefore are likely

12  to have been --

13                THE COURT:                Extracted.

14                MR. FENWICK:              -- extracted by

15  the individuals against whom we will be entitled to

16  trace those assets, but we should be at liberty, in

17  those circumstances, to renew the application against

18  Pomytkin and Rogalskiy, not on the basis of damages

19  claimed, but on the basis that they are likely to hold

20  traceable proceeds of the assets held on constructive

21  trust by the BVI companies, because otherwise as soon

22  as they leave BVI they become immune from prosecution

23  and normal tracing remedies would thus be denied.  So,

24  I invite Your Lordship to order that we may renew the

25  application against them if it transpires that the

1  money is going to be abstracted from those companies

2  presumably by the ultimate beneficial owners.

3          THE COURT:          Well, I haven't

4  granted you the full disclosure orders that you wanted,

5  but it doesn't mean to say you won't find out.

6          MR. FENWICK:          If it's gone.

7          THE COURT:          What?

8          MR. FENWICK:          We would find

9  out if the money is gone because they have to say what

10  their assets are.

11          THE COURT:          Yes.

12          MR. FENWICK:          Having received

13  17 million (unclear).

14          THE COURT:          I don't think

15  as fast as you, Mr. Fenwick, so you can certainly renew

16  the application.

17          MR. FENWICK:          I'm grateful.

18          THE COURT:          But I am not

19  suggesting for a minute that it will succeed.

20          MR. FENWICK:          I understand.

21  But I would have to explain to Your Lordship, since

22  it's Your Lordship's position, the reason why I seek

23  that order.

24          THE COURT:          Yes.  I don't

25  think what I have done would preclude you in any event,

17

1 but if you want it for the avoidance of doubt --

2                    MR. FENWICK:              I do.

3                    THE COURT:                -- you've got

4 it.

5                    MR. FENWICK:              I am grateful.

6                    My Lord, in circumstances where we have

7 today in the hope and expectation unfulfilled that Your

8 Lordship would grant protection in respect of what

9 appear to be the proceeds of monies filtered through

10 BVI companies, namely, the Russian and other

11 properties, disclose those properties so that the

12 Defendants now know what they are.  I ask for

13 permission to appeal in respect of Rogalskiy and

14 Pomytkin and the assets we have identified in the

15 schedule.

16                    THE COURT:                You don't need

17 it, do you?

18                    MR. FENWICK:              Probably not.

19                    THE COURT:                I think

20 definitely not.

21                    MR. FENWICK:              I never want to

22 find out if I haven't asked for it when I should have.

23 If I don't need it --

24                    THE COURT:                Well, if you

25 need it, I think you should have it.

18

1        MR. FENWICK:            I am grateful.

2        THE COURT:             But I don't

3   believe that you do.

4        MR. FENWICK:            Well, I'll

5   educate myself, but I didn't want to have left here

6   without having asked for it if I needed to --

7        THE COURT:             No, of course

8   not, most uncomfortable feeling.

9        MR. FENWICK:            Yes.  And will

10  Your Lordship therefore reserve the costs because there

11  is the other matter which have to be dealt with?

12       THE COURT:             What costs?

13  I've made no order for costs.

14       MR. FENWICK:            No.  In that

15  case -- I see there is no provision here for costs in

16  the Order, but I would normally in England be asking

17  for costs to be reserved.

18       THE COURT:             To what?

19       MR. FENWICK:            Your Lordship

20  is going to give a return date, I assume, given this is

21  ex parte.

22       THE COURT:             I do have to.

23       MR. FENWICK:            Yes.  I would

24  invite you to reserve it to the return date.

25       THE COURT:             I think you

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

19

1   would have to get a return date, because I haven't got

2   a diary in front of me.  I mean you would have to go to

3   --

4              MR. FENWICK:              I think the

5   Rules says it has to be within 28 days.

6              THE COURT:              28 days, yes.

7              MR. FENWICK:              I'm hopeful it

8   would depend upon the availability of the Court,

9   somebody who could hear it.  It may be for ten minutes.

10  Well, unless there is substantive application to

11  discharge.

12             THE COURT:              Well, there may

13  be the applications to discharge, but I mean, I don't

14  know.  I mean, I think I'll be here in 28 days, unless

15  --

16             MR. FENWICK:              My Lord, we

17  will fix a date.  Yes.  Your Lordship has made an order

18  I think in relation to ETP one, two and three and we

19  will incorporate that somewhere in the Order.

20             THE COURT:              Yes, I do think

21  that --

22             MR. FENWICK:              Within 14 days

23  for affidavit.  I don't know how long it will take us

24  to do it.  It might take only 20 minutes.

25             THE COURT:              It probably

1  will take 20 minutes.  I mean, I'm just going to say

2  within a reasonable time.

3            MR. FENWICK:          Okay.

4            MR. EMERY:          My Lord, just a

5  short point that I raised earlier just so I have it on

6  the record here.  I have been told that the application

7  that is set out (unclear).

8            THE COURT:          I'm sorry,

9  Mr. Emery, I'm not hearing you.

10           MR. EMERY:          Sorry.  The

11 Fifth Respondent, Sevan Properties Management Limited,

12 I was informed outside that indeed Mr. Fenwick took you

13 to affidavit evidence that the freezing order was not

14 pursued against Sevan.  In that light, may I just for

15 the record to ask Your Lordship --

16           THE COURT:          Is that right?

17           MR. EMERY:          Yes, My Lord.

18           THE COURT:          Yes, okay.

19 Well the Order will have to not include that.

20           MR. EMERY:          May I ask for

21 Sevan's costs of appearing today?  They were served on

22 the 22nd of January, given notice --

23           THE COURT:          Did you come

24 here for the second?

25           MR. EMERY:          My Lord, I

21

1    arrived this morning for both and I was outside in the

2    hallway and I was told --

3                    THE COURT:                    Yes.  But I

4    mean you can't be split in half down the middle,

5    Mr. Emery.  You've been here anyway.  You haven't said

6    anything.  You haven't made special points in relation

7    to Sevan.

8                    MR. EMERY:                    My Lord, I am

9    in your hands.

10                   THE COURT:                    Okay.  Well, I

11   merely say no.  Okay.

12                   MR. CRUICKSHANK:              My Lord, if I

13   could also raise one brief point.  My understanding is

14   that, I think I am correct in saying the application

15   failed against my client, Kopist.

16                   THE COURT:                    It did, yes.

17   Because I say it was only against recipient.

18                   MR. CRUICKSHANK:              In those

19   circumstances, I would then invite Your Lordship to

20   award the costs of the application in favour of Kopist.

21                   THE COURT:                    Well,

22   Mr. Fenwick, I can't do anything else, can I really?

23                   MR. FENWICK:                  I don't think

24   Your Lordship can in the circumstances.

25                   THE COURT:                    Right.  Well,

1   what are your costs?  I don't want this to escalate.

2              MR. CRUICKSHANK:         I would invite

3   Your Lordship to make an order that there be an agreed

4   figure to be assessed.  We simply haven't had time to

5   put together a costs schedule.

6              THE COURT:              Well, I don't

7   want to have anymore unnecessary expenditure of any

8   sort.  If I said $2,500, would you be upset?

9              MR. CRUICKSHANK:        Yes.

10             THE COURT:              Right.  How

11  badly?

12             MR. CRUICKSHANK:        Quite

13  significantly.  I think, I am guessing we're going with

14  20,000 plus.

15             MR. FENWICK:            My Lord, if

16  they're going to be in that Order, they really need to

17  be assessed.

18             THE COURT:              Okay.  I was

19  just trying to shortcut it unwise.  Okay, you can have

20  your costs to be assessed.  Anything else?

21             MR. FENWICK:            Grateful to

22  Your Lordship.

23             THE COURT:              Thank you very

24  much.

25             (Matter concluded at 2:36 p.m.)

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

23

### REPORTER'S CERTIFICATE

I, LISSA NOEL, Certified Court Reporter do hereby certify:

That on the 9th day of February, 2016, the foregoing proceedings were taken down by me in machine shorthand, consisting of 23 pages herein; that the foregoing is a true and correct transcript of the proceedings had.

That I am not an attorney, relative, or employee of any party hereto, or otherwise interested in the events of this cause;

IN WITNESS WHEREOF, I have hereunto affixed my signature at Road Town, Tortola, British Virgin Islands, this 16th day of February, 2015.

_____
LISSA NOEL
Certified Court Reporter

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT